UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STEVAN GOOZEE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2:24-cv-01469-SGC |
| | ) |
| STATE FARM FIRE AND | ) |
| CASUALTY COMPANY, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER[1]

Stevan Goozee and Christine Goozee (collectively, the "Goozees") commenced this action against State Farm Fire and Casualty Company ("State Farm") in the Circuit Court of Shelby County, Alabama. (Doc. 1-1 at 7).[2] State Farm removed the action to this court under 28 U.S.C. § 1441 on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Doc. 1). The Goozees moved to remand under 28 U.S.C. § 1447, arguing State Farm failed to establish the amount in controversy exceeds the jurisdictional threshold of $75,000. (Doc. 7). The parties

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9).

[2] Citations to the record refer either to the document and page numbers assigned by the court's CM/ECF electronic document system or to the document number assigned by CM/ECF and the paragraph number assigned by the drafter of the document. The former type of citation appears in the following format: (Doc. __ at __). The latter type of citation appears in the following format: (Doc. __ at ¶__).

have fully briefed the motion. (Docs. 7, 13, 14). For the reasons stated below, the court will deny the plaintiffs' motion to remand.

## I. Background

In early 2023, the Goozees listed their Birmingham, Alabama home for sale. (Doc. 1-1 at 8, 11). On February 24, 2023, Alabama Roof RX inspected the Goozees' roof, determined approximately 40 shingles had been damaged by wind, and recommended the Goozees make a claim under their homeowners' insurance policy. (*Id.* at 8). That same day, Christine contacted State Farm to submit a claim.[3] (*Id.*).

On March 6, 2023, State Farm Claims Specialist Alexander Montoya inspected the Goozees' roof. (*Id.*). He took photographs and measurements, but he told Christine he was not licensed to get on the roof and would hire a licensed roof inspector from Hancock Claims Consultants. (*Id.* at 8-9). Hancock inspected the roof the following day and generated an inspection photograph form that included approximately 20 photographs of shingles labeled "wind damage." (*Id.*). Hancock concluded approximately 40 shingles had suffered wind damage. (*Id.*). The Goozees requested a copy of Hancock's inspection report, but State Farm refused to provide them a copy. (*Id.*).

---

[3] At all relevant times, the Goozees' home was insured by State Farm, policy no. 01-BE-A320-2. (Doc. 1-1 at 8).

2

State Farm then hired another inspector, Danny Smith with Forensic Analysis and Engineering, to inspect the roof. (*Id.*). When Smith inspected the roof, Steven Blomstedt with Alabama Roof RX was present and provided Smith the following support: ladder placement to the roof, advice regarding the need to wear appropriate footwear, and advice for accessing certain parts of the roof. (*Id.* at 10). Smith ultimately reported to State Farm that the roof was not damaged by wind. (*Id.*).

On April 17, 2023, State Farm notified Christine via a letter that it was denying the Goozees' claim because the damage was not caused by wind. (*Id.*). The April 17 letter referenced Smith's conclusion but did not address the conclusions of Hancock or Alabama Roof RX. (*Id.*). The Goozees' local State Farm agent requested reconsideration of the decision, but State Farm did not change its decision. (*Id.*).

The Goozees sold their home on June 12, 2023. (*Id.* at 11). They were forced to reduce the sales price of their home by $32,476 because the purchaser would need to replace the roof. (*Id.*).

## II. Procedural History

On September 26, 2024, the Goozees filed their lawsuit in state court, asserting against State Farm claims for breach of contract and bad faith failure to pay their insurance claim. (Doc. 1-1 at 7-13). The Goozee's complaint referenced the $32,476 reduction in the sales price of their home and requested an unspecified amount of compensatory and punitive damages. (Doc. 1-1 at 11-12).

State Farm was served on September 30, 2024. (Doc. 1-1 at 21). On October 29, 2024, State Farm removed the action, asserting this court had original diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1). In support of its Notice of Removal, State Farm alleged (1) it is a citizen of Illinois, while the Goozees are citizens of Alabama and (2) the amount in controversy exceeds $75,000. (Doc. 1 at 3-7). On November 20, 2024, the Goozees moved to remand the action to the Shelby County Circuit Court, arguing State Farm did not adequately prove the amount in controversy exceeds $75,000. (Doc. 7).

### III. Standard of Review

A defendant may remove an action from state court to federal district court if the district court would have had original subject matter jurisdiction, including diversity jurisdiction. 28 U.S.C. § 1441(a); *see also PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016). Diversity jurisdiction exists where an action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). Multiple claims by one plaintiff generally can be aggregated to satisfy the $75,000 requirement. *Andrews v. Med. Excess, LLC*, 863 F. Supp. 2d 1137, 1139 (M.D. Ala. 2012).

Federal courts, which are courts of limited jurisdiction, have a strict duty to exercise the jurisdiction conferred upon them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095

(11th Cir. 1994). "[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns*, 31 F.3d at 1095. As the party seeking federal jurisdiction, State Farm bears the burden of demonstrating the existence of original federal subject matter jurisdiction, including proving the amount in controversy exceeds the jurisdictional minimum. *See Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001); *see also Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) ("If a plaintiff makes an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement.") (internal quotation marks and punctuation omitted).

Where a complaint does not specify the amount of damages it seeks and removal is based on diversity, a defendant is not required to incorporate into its notice of removal evidence establishing the amount-in-controversy requirement is met; instead, it need only plausibly allege in the notice the amount in controversy exceeds the jurisdictional threshold. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84, 89 (2014). If a defendant plausibly alleges the amount-in-controversy requirement is met, that allegation "should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 87. However, "[i]f the

5

plaintiff contests the defendant's allegation . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88 (citing § 1446(c)(2)(B)). The preponderance of the evidence standard does not require a removing defendant "to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

Satisfaction of the amount-in-controversy requirement may be apparent on the face of a complaint, even if the complaint does not seek a specific amount of damages. *Id.* (citing *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001)). A court may use its reasoning and common sense in assessing whether the face of a complaint establishes the minimum jurisdictional amount. As stated in *Roe*:

> Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable. Put simply, a district court need not suspend reality or shelve common sense in determining whether the face of a complaint establishes the jurisdictional amount. Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

613 F.3d at 1061–62 (internal quotation marks, citations, and punctuation omitted).

If not facially apparent from the complaint, a court should look to the notice of removal and other evidence to determine whether the amount in controversy exceeds the jurisdictional threshold. *Id.* (citing *Williams*, 269 F.3d at 1319; 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 107.14[2][g] (3d ed. 2010)

("When determining if the defendant has satisfied this burden [to establish jurisdiction by a preponderance of the evidence], the court will consider first whether it is facially apparent from the complaint that the jurisdictional amount is in controversy. If it is not, the court may consider facts alleged in the notice of removal, judicial admissions made by the plaintiffs, non-sworn letters submitted to the court, or other summary judgment type evidence that may reveal the amount in controversy requirement is satisfied.")); *see also* 14AA FED. PRAC. & PROC. JURIS. § 3702.3 (4th ed.) (noting substantially the same).

## IV. Discussion

In its notice of removal, State Farm asserted the amount in controversy was satisfied because (1) the Goozees alleged bad faith nonpayment of a claim for storm damage to their home (worth seven figures); (2) the Goozees reduced the sales price of their home by more than $32,000; (3) during the adjustment of their claim, the Goozees alleged there was interior damage to the ceiling and walls of multiple rooms; (4) the Goozees' policy with State Farm covers various losses well in excess of $75,000; and (5) the Goozees' demand for punitive damages "plainly establish[es] that the amount in controversy is met." (Doc. 1 at 6-7).

While the Goozees do not dispute that the parties are completely diverse, they contend State Farm failed to carry its burden of proving the amount in controversy exceeds $75,000. First, they argue the purported value of their home is irrelevant to

7

the amount in controversy, as is the reference to interior damage, because this action concerns only State Farm's failure to pay for repairs to the roof. Second, the Goozees contend the policy limits are also irrelevant because they do not allege a total loss and when "determining the amount in controversy in the insurance context, numerous courts have held that 'it is the value of the claim, not the value of the underlying policy, that determines the amount in controversy.'" *See Lexington Ins. v. Jones*, No. CIV. A. 09-0223-KD-N, 2009 WL 2197374, at *2 (S.D. Ala. July 22, 2009); *Fields v. Travelers Indem. Co.*, No. 2:08-CV-00155-WKW, 2008 WL 2225756 (M.D. Ala. May 28, 2008). Third, they assert that neither their complaint nor State Farm's notice of removal contains allegations regarding the monetary value of their roof damage claim, and so there is no evidence before this court as to the monetary value of their claim.

In its notice of removal, State Farm cited two cases to support its contention that the amount in controversy exceeds $75,000, *Shepherd v. State Farm Fire & Cas. Co.*, No. 7:12-CV-0580-LSC, 2012 WL 3139752 (N.D. Ala. July 30, 2012), and *Spencer v. Homesite Ins. Co. of the Midwest*, No. 2:23-CV-01732-LSC, 2024 WL 917365, at *1 (N.D. Ala. Mar. 4, 2024). In *Shepherd*, the plaintiff sued State Farm for breach of contract and bad faith refusal to pay his insurance claim for personal property he lost when his home was destroyed by fire. 2012 WL 3139752. State Farm assessed Shepherd's losses at $23,700.81 and paid him that amount, but

8

Shepherd valued the items at $112,430. He demanded State Farm pay him his personal property policy limit of $62,250. When State Farm failed to do so, Shepherd sued in state court for unspecified compensatory damages, damages for mental and emotional stress, and punitive damages. State Farm removed the case, and Shepherd moved to remand. The court determined the amount in controversy exceeded $75,000 because (1) there was a minimum of $38,549.19—the difference between State Farm's payment to Shepherd and his personal policy limits—in controversy; (2) "an award of up to $40,000 would arguably be appropriate to compensate Shephard for the worry and mental anguish" involved; and (3) based upon the court's "judicial experience and common sense," an appropriate award of punitive damages would range from $38,549.19 to $77,098.38. *Id.* *2-3.

In *Spencer*, the plaintiff sued her insurer, Homesite Insurance Company of the Midwest, in state court for breach of contract and bad faith failure to pay her insurance claim after a tree fell on her home. 2024 WL 917365. Homesite directed Spencer to solicit repair estimates, and she received two estimates: (1) a $2,061.00 estimate for initial work to protect her home from further damage and (2) a detailed estimate of $57,145.00 for the repairs to return her home to its pre-loss condition. Homesite paid Spencer $21,599.51 before Spencer filed suit seeking unspecified compensatory and punitive damages. Homesite removed based on diversity jurisdiction, and Spencer moved to remand based on the amount in controversy. The

court determined the amount in controversy exceeded $75,000 because (1) Spencer sought at least $37,606.49 in compensatory damages[4] and (2) based on the court's "'judicial experience and common sense,' . . . if Spencer's bad faith claim prove[d] meritorious, a punitive award of greater than $37,606.49 [was] reasonably at issue." *Id.* at *4.

The Goozees contend that, unlike *Shepherd* and *Spencer*, there is no evidence here of the monetary value of their claim. They argue that even if the court concludes they are seeking $32,476 in damages, State Farm has not proven the punitive damages claim bridges the gap of $42,525. They cite *Freeman's 66 v. Scottsdale Insurance Co.*, where the plaintiff sued its insurer, Scottsdale Insurance Company, in state court for breach of contract and bad faith failure to pay its insurance claim after a vehicle accident caused damage to business property. No. 6:12-CV-00099-LSC, 2012 WL 1747973, at *1 (N.D. Ala. May 15, 2012). Although Freeman's 66's complaint did not specify a total amount in controversy, it claimed compensatory damages in the amount of $12,400 for replacing a metal awning and $12,600 for replacing three gas pumps, as well as punitive damages. In support of its notice of removal, Scottsdale cited three reported judgments, verdicts, and settlements in other cases for breach of contract and bad faith failure to pay. The court found the facts of *Freeman's 66* distinguishable from the cases Scottsdale cited and concluded

---

[4] $2,061 + $57,145 - $21,599.51

Scottsdale only proved "that a plaintiff claiming bad faith *may* recover punitive damages in a range from less than $45,000 to $1.5 million." Finding Scottsdale had not established by the preponderance of the evidence that Freeman's 66 sought punitive damages exceeding the amount in controversy, the court remanded the case.

The Goozees also cite *Shiver v. Trudel*, where the plaintiffs sought unspecified compensatory and punitive damages for their negligence and wantonness claims relating to a car collision that resulted in severe bodily injuries of five people. No. 3:11-CV-917-WKW, 2012 WL 1366737, at *1 (M.D. Ala. Apr. 19, 2012). The plaintiffs alleged the amount in controversy exceeded $50,000. The court ultimately determined the complaint did not contain enough factual allegations to conclude the amount in controversy exceeded $75,000 because (1) the allegations of permanent injury and disfigurement were "boilerplate"; (2) the complaint contained no factual detail regarding the nature, severity, and degree of permanence of the injuries; (3) the complaint lacked facts describing how the defendants acted wantonly. *Id.* at *3. "Overall, the Complaint rests largely on legal conclusions and does not provide a factual basis upon [which] to ascertain whether the amount in controversy exceeds $75,000." *Id.* Because the complaint was a "factual vacuum" that was "inconclusive on damages, the absence of evidence pertaining to the value of the punitive damages claim preclude[d] Defendants from satisfying their removal burden." *Id.*

The Goozees' complaint specifically alleges they "were forced to reduce the sales price of their home by approximately $32,476 due to the fact that the new owners would need to replace the roof." (Doc. 1-1 at 11). Despite their decision to include this figure in their complaint, they now urge this court to ignore that figure when assessing the amount in controversy. The court rejects this argument – the face of the complaint plainly establishes that the minimum amount in controversy here is $32,476. Consequently, the question is whether State Farm has established by the preponderance of the evidence that at least another $42,525 is reasonably in controversy.

Here, the Goozees essentially claim that after State Farm was informed of wind damage to their roof, by not only the Goozees but also State Farm's own licensed roof inspector, it hired a second inspector—one who apparently lacked the basic knowledge and equipment needed to properly inspect a roof—to manufacture a debatable reason to deny the Goozees' claim. Unlike the vague facts in *Shiver*, these specific allegations support a claim of bad faith, and so the court considers whether the amount of potential punitive damages here reasonably exceeds $42,525.

Based on its "judicial experience and common sense," the court concludes that if the Goozees are successful on their bad faith claim, they are reasonably likely to recover at least $42,525 in punitive damages. The purpose of punitive damages is not to compensate the plaintiff, but to punish the wrongdoer and deter it and others

12

from future wrongful behavior. *Shepherd*, 2012 WL 3139752, at *3. Here, given the amount of compensatory damages at issue and the fact that State Farm is a large corporation, punitive damages could reasonably range from $32,476 to $97,428. *See, e.g., Shepherd*, 2012 WL 3139752, and *Spencer*, 2024 WL 917365; *see also Allred v. State Farm Ins. Co.*, No. 5:22-CV-00289-LCB, 2022 WL 22935832, at *4 (N.D. Ala. June 21, 2022) (holding that where plaintiff sued insurer for breach of contract and bad faith failure to pay for $23,000 repair of roof, "punitive damages against a large corporation like State Farm would alone exceed $75,000"). Because $42,525 is well within the lower range of that estimate, the court finds State Farm has met its burden to demonstrate the amount in controversy more likely than not exceeds $75,000.

## V. Conclusion

For the foregoing reasons, the court finds State Farm has shown by a preponderance of the evidence that more than $75,000 is in controversy in this case. Accordingly, the Goozees' motion to remand is **DENIED**. (Doc. 7).

**DONE** this 8th day of July, 2025.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE